# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| V. | § | CASE NO. 4:13cr67.4 |
| | § | |
| GUSTAVO ORTIZ-SALAZAR | § | |

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE DENYING DEFENDANT'S MOTION TO SUPPRESS PRETRIAL AND IN COURT IDENTIFICATIONS

This matter having been referred by the Honorable Richard A. Schell (*see* Dkt. 129), the Court has considered Defendant's Motion to Suppress Pretrial and in Court Identifications (Dkt. 120).[1] After considering the evidence and arguments presented at the hearing held on October 29, 2014, the Court finds that the motion should be DENIED.

Defendant is charged in this matter with conspiracy to possess with the intent to distribute heroin in violation of 21 U.S.C. § 846. In his motion, Defendant seeks to suppress all pretrial and in court identifications, if the Court determines that any photographic lineups used in this case were impermissibly suggestive.

---

[1]The title of Defendant's motion also seeks a "Pretrial Identification Hearing." To the extent Defendant's motion seeks an identity hearing, Defendant waived that matter in the Northern District of Illinois and U.S. Magistrate Judge Daniel Martin found that he was the person named in the arrest warrant. *See* Dkt. 8 in 1:14cr347 in the United States District Court for the Northern District of Illinois.

1

**AUTHORITY**

An identification of a defendant in a police-organized photo lineup should be suppressed only when the photographic identification procedure was so unnecessarily suggestive as to give rise to a substantial likelihood of irreparable misidentification. *Perry v. New Hampshire*, __ U.S. __, 132 S.Ct. 716, 724, 181 L. Ed.2d 694 (2012); *Simmons v. United States*, 390 U.S. 377, 384–85, 88 S.Ct. 967, 971–72, 19 L. Ed.2d 1247 (1968). The Due Process test for the suppression of an eyewitness identification is implicated only when law enforcement officers use an identification procedure that is both suggestive and unnecessary. *Perry*, __ U.S. at __, 132 S. Ct. at 724; *Neil v. Biggers*, 409 U.S. 188, 198, 93 S.Ct. 375, 381–82, 34 L.Ed.2d 401 (1972). If a court finds that the photo array was not impermissibly suggestive, the inquiry ends. *U.S. v. Shaw*, 894 F.2d 689, 692 (5th Cir. 1990).

If unnecessary suggestion is shown, suppression of an identification is not necessarily mandatory. *Perry*, __ U.S. at __, 132 S. Ct. at 724. Instead, the court must analyze the facts on a case-by-case basis of to determine whether improper police conduct created a "substantial likelihood of misidentification." *Id.* Factors the Supreme Court has instructed courts to employ in making this evaluation include (1) the witness' opportunity to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness' prior description of the criminal, (4) the level of certainty demonstrated at the confrontation, and (5) the time between the crime and the confrontation. *Biggers*, 409 U.S. at 199–200, 93 S. Ct. at 382–83.

## EVIDENCE PRESENTED

At the hearing in this case, Special Agent Shannon Mulcahy with the DEA testified about the preparation and presentation of the photo lineups containing Defendant's photograph. According to Mulcahy, the "six pack" photo array containing six photographs, one of which was that of Defendant, were created by Texas DPS. Mulcahy testified that a fellow law enforcement agent sent Defendant's picture along with photographs of four other persons of interest to DPS for the creation of five separate "six pack" photo arrays, such that each array contained a photo of one of the persons of interest. According to Mulcahy, the other five photos in the photo array are chosen by DPS out of a database and are selected from individuals with similar features (*i.e.*, facial hair, hair color, eye color and facial composites). Mulcahy further testified that the position in which the suspect is placed on the photo array is randomly selected by DPS, but when DPS is creating more than one photo array for a case, it does not (or attempts not to) place the person of interest's photograph in the same spot on every array. Here, Defendant's photo was in the first spot on the photo array at the top left hand side of the page. Mulcahy indicated that no other person of interest would likely have been placed in the first spot when the other four photo lineups in this case were generated. According to Mulcahy, DPS was not given any instructions in this case regarding the creation of the lineups.

At the hearing, Mulcahy demonstrated how she shows a photo array to a witness, indicating that she holds the paper with her finger at the center top. She testified that she instructs witnesses to take their time in looking at the photo lineups and that she asks them "Do you recognize anyone?" According to Mulcahy, witnesses often will identify an individual by name. If they only point to the picture, she will ask the witnesses who they think the person is. If witnesses state that they are 100%

positive as to their identification, Mulcahy asks them to place their initials next to the photo. If they are not, they are not asked to initial anything.

According to Mulcahy, three witnesses have positively identified Defendant in this case and have placed their initials on a photo array containing his picture. Those witnesses were not identified by Mulcahy or Defendant in his motion (other than to state that they are alleged co-conspirators) and no testimony was presented as to any photo lineup conducted with any particular witness.

**ANALYSIS**

The Court finds that there was nothing about the photo lineup here that was unnecessarily suggestive as to give rise to a substantial likelihood of irreparable misidentification. The photo arrays were created by an outside agency using a database of photographs, and the placement of Defendant's photo was randomly placed at position 1 in variance from the placement of other suspects' photographs on their arrays.

As to the array itself, Defendant argues that the backgrounds in each photo vary in their level of darkness; that Defendant is wearing a necklace (which the Court notes is barely visible) and no other men are; and that not all shirts are collarless like Defendant's. The Court is not convinced. "[T]he disparate physical appearances of the lineup participants is not alone sufficient to warrant a finding of suggestiveness." *Swicegood v. Alabama*, 577 F.2d 1322, 1327 (5th Cir. 1978) ("Police stations are not theatrical casting offices; a reasonable effort to harmonize the lineup is normally all that is required.") (citations omitted). *See also U.S. v. Lang*, 2007 WL 1725548, 10 (5th Cir. 2007) ("The government is not required to fill a lineup with other photos of men of roughly Lee's age, hair,

4

and skin tone, all of whom have tattoos on their faces."). More importantly, in this case, the Court finds that the photographs used in Defendant's photo array were of men of similar hair color, weight and age. The type of shirt or jewelry worn is irrelevant to identification, and the background behind Defendant did not highlight his photograph over any other.

Further, there is nothing suggestive or coercive about the manner in which Mulcahy physically shows the lineup to witnesses – in fact, in this case, if her finger could be construed to have indicated any photo, it was that of the man in the second position, not Defendant. The Court further finds that Mulcahy's manner of questioning witnesses is not coercive as to any identification whatsoever, and, as to this case, it certainly in no way suggested that Defendant was the subject of the lineup. The Court finds that the photo array was not impermissibly suggestive and there are no grounds for suppression. *See U.S. v. Shaw*, 894 F.2d 689, 692 (5th Cir. 1990).

## RECOMMENDATION

The Court recommends that Defendant's Motion to Suppress Pretrial and in Court Identifications (Dkt. 120) be DENIED. Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. § 636(b)(1)(C).

A party is entitled to a *de novo* review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report shall bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted

by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *Id.; Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 6th day of November, 2014.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE